UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

**************************************************

UNITED STATES OF AMERICA,                          *

                            Plaintiff,            *

                -v-    18-cr-404            *

CAMMRON ROBINSON,                                  *

                        Defendant.            *

**************************************************


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE THOMAS J. McAVOY
May 9, 2019
445 Broadway, Albany, New York


FOR THE GOVERNMENT:

OFFICE OF THE UNITED STATES ATTORNEY
BY:  Geoffrey J.L. Brown, AUSA
100 South Clinton Street
Syracuse, New York 13261

FOR THE DEFENDANT:

OFFICE OF THE FEDERAL PUBLIC DEFENDER
BY:  Lisa A. Peebles, Esq.
4 Clinton Square, 3rd Floor
Syracuse, New York  13202

1          COURT CLERK:  The United States of America

2     versus Cammron A. Robinson, 18-cr-404.  Appearance for

3     the government.

4          MR. BROWN:  Geoffrey Brown for the United

5     States.  Good afternoon, your Honor.  Good afternoon,

6     Mr. Brown.

7          COURT CLERK:  On behalf of the defendant.

8          MS. PEEBLES:  Lisa Peebles on behalf of the

9     Mr. Robinson, who is also present.  Good afternoon, your

10    Honor.

11         THE COURT:  Good afternoon, Ms. Peebles.  Good

12    afternoon, Mr. Robinson.

13         COURT CLERK:  Ms. Peebles and Mr. Robinson,

14    please come forward to the podium.  Mr. Robinson, if you

15    would raise your right hand please.

16         (Defendant placed under oath)

17         COURT CLERK:  If you both project your voice

18    into the microphone, keep your voices up please.

19         THE COURT:  All right, Mr. Robinson and Ms.

20    Peebles, the Court has received and considered a large

21    number of documents in connection with this sentencing.

22    First of all, and of course most importantly, the

23    presentence investigation report prepared by the

24    probation department.  Court has reviewed the plea

25    agreement, has examined the materials forwarded to me by

U.S. v ROBINSON - 18-cr-404

1   the psychological centers from Rhode Island.  The Court

2   has received and reviewed the documents submitted by

3   both the government and the defendant with respect to

4   the posture the Court should take regarding sentencing.

5            The Court has received and reviewed an

6   enormous volume of material with respect to the victims

7   in the case that have responded, and the Court would

8   first ask, Mr. Robinson, have you had an opportunity

9   with Ms. Peebles to review the content of the

10  presentence report?

11           THE DEFENDANT:  Yes, your Honor.

12           THE COURT:  And, Ms. Peebles, did you read and

13  explain the reports to Mr. Robinson?

14           MS. PEEBLES:  Yes, I have, your Honor.

15           THE COURT:  Is there anything in the report

16  particularly that you wanted to take exception to?

17           MS. PEEBLES:  Your Honor, I did have

18  objections but they have been addressed by the probation

19  department, and I'm satisfied with the response that

20  they have provided and I think they're correct --

21  corrections have been made.

22           THE COURT:  All right.  How do you feel about

23  that, Mr. Robinson?

24           THE DEFENDANT:  Okay, your Honor.

25           THE COURT:  And Mr. Brown?

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

U.S. v ROBINSON - 18-cr-404

1          MR. BROWN:  No objection, your Honor.

2          THE COURT:  All right.  What would you like to

3    say on behalf of your client before I sentence him?

4          MS. PEEBLES:  Your Honor, I submitted a video

5    on behalf of Mr. Robinson in connection with his case,

6    primarily to show the Court exactly how things started

7    when he was young and how he became adopted by

8    Mr. Stuart Robinson.  Unfortunately, Mr. Robinson wasn't

9    able to be here today, which is why I wanted you to be

10   able to see how he would articulate what he had to say

11   on behalf of his son, Cammron.

12          As he explained -- as Mr. Robinson explained

13   in the video, I mean, unfortunately Cammron, as the

14   Court knows has had a -- a horribly tragic existence,

15   starting when he was a baby.

16          THE COURT:  Court agrees.

17          MS. PEEBLES:  It might be probably in the top

18   three saddest cases historically that I ever handled in

19   federal court, and it's heart wrenching to see a little

20   boy in the video who is just looking to -- for a home or

21   people will be nice to him, and Mr. Robinson was just an

22   amazing human being for taking Cammron home with him and

23   providing a place for him to live where he was loved.

24   And there were many times when he was thriving but it

25   was an enormous amount of work for Stuart Robinson

1    because of all of the issues that Cammron brought with

2    him, and he describes Cammron as being a lab rat for

3    medications and trying to help get him where he needed

4    to be.

5          Just really a sad, sad situation.  He talks

6    about how he struggled and Cammron has even knew how

7    much he was struggling and I think, your Honor, that

8    where he is in his life right now, he recognizes what he

9    did was wrong, and I'm not so sure when he was doing the

10   things he was doing with the gaming videos with the

11   teenagers that he even understood how wrong it was.

12         And I know that in the presentence report

13   there is indications that he did not do well when he was

14   initially arrested and he was put in the county jail

15   but that was because he was adapting again to another

16   environment, and he was scared and he was emotionally

17   unstable because he didn't know what was going to

18   happen.  He's since been able to wrap his head around

19   what happened, what he did, and he's kind of acclimated

20   to his environment, which is what he's done most of his

21   life.

22         With that, your Honor -- and I think I lay out

23   in my sentencing submission to the Court it seems to me

24   that 15-year prison sentence for someone like Cammron

25   Robinson is more than sufficient to satisfy the

1   statutory purposes of punishment because I think Cammron

2   is somebody who, in a structured environment, in a

3   loving situation and Stuart Robinson has indicated that

4   he's going to be there for Cammron when he's released

5   from prison.  He will still be the support network that

6   Cammron needs and because he believes in Cammron and he

7   needs that, he has these good qualities and he's a good

8   person and -- and -- deep down and always looked to try

9   to find a connection in a loving relationship.

10          So, with that, your Honor, I think with

11  treatment, with medication, with the right environment

12  that Cammron will thrive.  It's a very scary thought for

13  him to go into a prison environment in light of his age.

14  He's a young man.  He's young.  And he was 20 years old,

15  if you go back to 2015, when kind of all this began, and

16  as I laid out in my submission to the Court, I think we

17  all know that teenagers and adolescents, their brain

18  does not develop, the prefrontal lobe cortex, until

19  they're in their mid-20s.  Cammron is not even there yet

20  and I know he will be there.  Well, you know, 15-year

21  period, within a 15-year sentence.

22          So I think, your Honor, in light of his age,

23  the conduct that he committed, the fact that what he did

24  was wrong, but those images were not distributed, were

25  not disseminated, no one else is ever going to see those

1    images, and Cammron has learned a great lesson from what

2    he has done and I note, your Honor, he accepted complete

3    responsibility, and I'm hoping, based on all the factors

4    that we have set forth in our submission, that you would

5    consider varying from the guidelines and imposing the

6    15-year mandatory minimum sentence.  Thank you.

7              THE COURT:  Thank you, Ms. Peebles.

8              All right.  Mr. Brown, what would you like to

9    say on behalf of the government?

10             MR. BROWN:  Thank you, your Honor.  Government

11   is not unsympathetic to obviously the horrific childhood

12   the defendant has had.  He has had an absolutely

13   horrible, horrible childhood, that's not in dispute.

14   But what also is not in dispute is what happened here

15   and what happened here is, quite frankly, a parent's

16   worst nightmare when it comes to the day and age we live

17   in.

18             The day and age we live in where children are

19   constantly on video games, where parents are constantly

20   trying to monitor their video games.  Some of those

21   video games have chat functions, and you got someone

22   who's taking advantage of a system designed to hopefully

23   provide children with an environment where he can do

24   things safely, and hopefully even with the parents on

25   there knowing that they're safe, the chat function on

1    those systems, being exploited by this defendant.

2    Again, recognizing the horrible background he's had, he

3    takes this system, he isolates these children by talking

4    to them through the headphones, talking to them through

5    the PlayStation and gets them alone, and he uses every

6    possible manipulation in the book from "I have stage 4

7    cancer" to "I'll bribe you", to "I'll hurt you", to

8    "I'll hurt your family", to something as silly as "I'll

9    lock you out of the game".

10           These are the things -- these aren't teenagers

11   sexting, your Honor.  These are 11-year-olds,

12   11-year-olds, 12-year-olds and one 13-year-old dealing

13   with somebody between the ages of 20 and 22, not two

14   teenagers sexting, being manipulated to do these things.

15           This is conduct that, again, as laid out in

16   the sentencing memo, is after the defendant has proven

17   to be, as a child, someone who is inclined to act

18   physically toward them.

19           When the search was done on his house, there

20   was findings of -- he was trying to find a bus route to

21   get to one of the victim's houses.  He was trying to

22   find a way to get to where victim number one lived.  He

23   was exploring that.  Did he?  No.  Was he considering

24   it?  Yes.

25           We have also got the issue of -- and, again, I

U.S. v ROBINSON - 18-cr-404

1  understand that background he's had, but we're not

2  dealing with someone who is sitting in prison terrified.

3  We are dealing with somebody who is sitting in prison

4  and acting out violently and angrily toward the guards.

5  He's defying their orders.  He's blocking the ability to

6  lock things.  He's telling one guard he's going to kill

7  him when he gets out.  This is not the behavior of

8  someone who appears to have been contrite and learning

9  their lesson.  It's, quite frankly, terrifying behavior

10 of someone who appears to be behaving like a sociopath

11 and, your Honor, I don't know that anyone in this

12 courtroom can know whether or not 15 years he's going to

13 come out on the other end of this and be a different

14 person with therapies and treatments, but we do know he

15 presents a grave risk to society.  He's proven he -- he

16 is that risk and a significant sentence should be

17 imposed here.  Thank you, your Honor.

18          THE COURT:  All right.  Mr. Robinson, did you

19 want to say anything to me before I sentence you?

20          THE DEFENDANT:  When I was at Cayuga County

21 Jail, I was not on my medicine and you can just look at

22 the difference that I had between Cayuga and Albany

23 where I found three tickets for just -- not anything

24 significant.  One is inmate assaulting me, one C.O.

25 thinking I said something and you look at the difference

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

U.S. v ROBINSON - 18-cr-404

1    between those two, then you can tell with medication and

2    therapy and programs and support that I'm much different

3    person.

4              THE COURT:  So you recognize that you do need

5    to be on medicine?

6              THE DEFENDANT:  Yes.

7              THE COURT:  To control your behavior, right?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  And without the meds, you can't

10   control it.  Right?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  Okay.  That's a significant mental

13   accomplishment.

14             THE DEFENDANT:  And two years prior, before I

15   got arrested, your Honor, to -- I wasn't really taking

16   my meds at all.

17             THE COURT:  Okay.  Anything else you'd like to

18   say?

19             THE DEFENDANT:  That I'm deeply sorry and I'd

20   like to apologize to society and my family and victims

21   for my actions.

22             THE COURT:  Okay.  Ms. Peebles, do you know

23   any reason I shouldn't sentences your client now?

24             MS. PEEBLES:  No, your Honor.

25             THE COURT:  You know, I'm taking into account

1   and I believe fully that this young man had a terrible,

2   horrendous background, one of the worst I've ever seen,

3   and he's lived through that, and he's lived through a

4   lot of problems coming up as he went to school and

5   dumped with other children and dealt with school

6   administration and officials but he's got a problem, an

7   internal problem that no one knows if it can be fixed.

8          First of all, we have got to try at some point

9   in time, which would be after he's incarcerated, to fix

10   him the best we can.  To do that with help from

11   probation, from all the mental health treatments and

12   medications we can get to help him adjust to society and

13   live a normal life.  But the Court fully recognizes that

14   we're starting out with damaged goods, and what he did

15   really is not tremendously surprising but the conduct is

16   very, very deeply shocking and what he did to the

17   victims is deeply shocking.

18          And I've been doing this, as you know, for

19   over 30 years, and I think we're looking at one of the

20   most serious cases that I have ever seen.  I want him to

21   be better but I don't know how to do that.  All I know

22   how to do is give him what I believe to be a fair

23   sentence in light of his conduct, in light of things

24   that he did get charged with, which was a lot of

25   pornography that he had that they never bothered even

U.S. v ROBINSON - 18-cr-404

1    charging him with, certainly was -- was in the picture

2    from the authorities.

3           So, the Court is not going to give him a

4    guideline sentence, going to give him a lesser sentence.

5           The Court has reviewed and considered all the

6    pertinent information, have already indicated that I

7    looked at the PSR, there is an addendum to that.  I

8    indicated I looked at the plea agreement, all the

9    submissions by counsel, the United States Sentencing

10   Guidelines manual and of course, I'm guided principally

11   by the statutory proscriptions in 18 U.S. Code, Section

12   3553(a) and the Court is now going to adopt the factual

13   content of the presentence report after it was vetted by

14   defense counsel with the probation office.

15          And the Court finds that the total offense

16   level is a 43, the criminal history category is I, and

17   the guideline imprisonment range is life.  However, as

18   the statutorily authorized maximum sentence is 1,440

19   months, the guideline range becomes 1,440 months.

20   Pursuant to the United States Sentencing Guideline

21   Section 5G1.1(a), each count, one through four, carries

22   a 15-year statutory minimum and a 30-year statutory

23   maximum.

24          After reviewing all the facts of the case, as

25   I indicated, the case imposed a non-guideline sentence.

U.S. v ROBINSON - 18-cr-404

1    In doing so, the Court notes that the guideline range,

2    although appropriately calculated, calls for a sentence

3    of 1,440 months or 120 years.

4           The Court finds that this is greater than

5    necessary -- got to excuse me.  I just charged a jury;

6    I'm not talking too clearly.  I apologize for my voice.

7    Let me take a swig of water, see if that helps.  Ask me

8    to repeat if I do.

9           Court finds that 1,440 months is greater than

10   necessary to meet the goals of sentencing as outlined in

11   18 U.S. Code, Section 3553(a) based on the defendant's

12   age, history of sexual abuse as a child, his terribly

13   difficult upbringing, which includes neglect, domestic

14   violence, significant and substance abuse issues within

15   his mother's home, his own mental health issues, and his

16   lack of any significant criminal history, all of which

17   are fully outlined in the presentence report.

18           However, in order for the sentence to reflect

19   the seriousness of the offense, promote respect for the

20   law, and provide just punishment for the offense, afford

21   adequate deterrence to criminal conduct, to protect the

22   public from further crimes of the defendant, the Court

23   determines a lengthy term of imprisonment is necessary

24   based on the nature of the instant offense, the age and

25   number of victims the defendant sexually exploited, and

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

U.S. v ROBINSON - 18-cr-404

1    the type of conduct the defendant induced some of the

2    victims to engage in.

3            Court does not find any other mitigating

4    factors which would warrant a sentence outside the

5    guideline range.

6            In determining the proper sentence, the Court

7    has considered the following:  There are four charged

8    minor male victims in this offense, ranging in age from

9    12 to 13, whom the defendant enticed to engage in sexual

10   explicit conduct and sent photos and video depictions of

11   such conduct through threats of other coercive tactics,

12   while inducing the misdemeanor males to send him

13   sexually explicit material of themselves; the defendant

14   threatened to harm one of the victim's families and told

15   another he had stage 4 cancer, was dying; he sent videos

16   of himself masturbating to at least one victim and

17   introduced another victim to the dark web knowing it was

18   where to find child pornography; he purchased a gift

19   card for one victim, along with the video game, in

20   exchange for the victim providing him with nude

21   photographs of himself.

22           In addition, in determining the appropriate

23   sentence to impose, the Court has considered that the

24   defendant possessed a large amount of child pornography

25   that has not been charged, as I indicated, with that

1   conduct and the evidence indicates that he sexually

2   exploited additional minors who were unable to be

3   located by law enforcement and hence, were not included

4   in the charges filed in this case.

5          Based upon all these factors, although the

6   guideline range is extreme, Court finds a substantial

7   sentence of incarceration is necessary in order to

8   reflect the seriousness of the offense.

9          Therefore, Mr. Robinson, upon your plea of

10   guilty on counts one, two, three and four of the

11   information, it is the judgment of this Court that you

12   are hereby committed to the custody of the Bureau of

13   Prisons for a term of 360 months on each of counts one,

14   two, three and four, to run concurrently, for a total

15   term of imprisonment of 360 months.

16          Court recommends that the defendant

17   participate in a sex offender treatment with Bureau of

18   Prisons and will entertain a motion by the defense

19   counsel for any particular location.

20          Upon your release from imprisonment, you shall

21   be placed on supervised release for a term of 15 years

22   on each of the counts one, two, three and four, terms to

23   run concurrently.

24          While on supervised release, you shall not

25   commit another federal, state or local crime and shall

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1   comply with the standard conditions that have been

2   adopted by this Court as well as the following special

3   conditions which the Court finds are necessary and

4   justified in this case based upon the nature of the

5   instant offense as well as the history and

6   characteristics of the defendant as outlined in detail

7   in the presentence report and to promote your

8   rehabilitation.

9           Number one:  You shall contribute to the cost

10  of any evaluation, testing and/or monitoring services

11  rendered in an amount to be determined by the probation

12  officer based on your ability to pay and the

13  availability of third-party payments.

14          Number two:  You shall not have direct contact

15  with any child you know or reasonably should know to be

16  under the age of 18, even your own children, without the

17  permission of the probation officer.

18          If you do have any direct contact with any

19  child you know or reasonably should know to be under the

20  age of 18, even your own child, without permission

21  informant probation officer, you shall report that

22  contact to the probation officer within 24 hours.

23  Direct contact includes written communication,

24  electronic communication, in-person communication or

25  physical contact.  Direct contact does not include

U.S. v ROBINSON - 18-cr-404

1    incidental contact during ordinary daily activities in

2    public places.

3              Number three:  You shall not go to or remain

4    at any place where you know children under the age of 18

5    are likely to be, including parks, schools, playgrounds,

6    and childcare facilities without the permission of the

7    probation officer.

8              Number four:  You shall not go to or remain in

9    a place where the primary purpose of observing or

10   contacting children under the age of 18.  You shall not

11   communicate or otherwise interact with victims one, two,

12   three and four either direct or through someone without

13   further obtaining permission of the probation officer.

14             Number six:  You shall undergo psychosexual

15   evaluation and if recommended by the evaluator, you

16   shall participate in a mental health treatment program

17   which may include, but will not be limited to,

18   participation in a sex offense-specific treatment

19   program.  Probation office must approve the location,

20   frequency and duration of that treatment.  You must

21   abide by the rules of the program.

22             Number seven:  Your supervision may include

23   examination using a polygraph, computerized voice stress

24   analyzer or other similar device to obtain information

25   necessary for supervision to obtain information

U.S. v ROBINSON - 18-cr-404

1    necessary for supervision, case monitoring and

2    treatment.

3           You shall answer the questions posed during

4    the examination, subject to your right to challenge in a

5    court of law the use of such statements as violations of

6    your Fifth Amendment rights.  In this regard, you shall

7    be deemed to have not waived your Fifth Amendment

8    rights.  Results of any examination shall be disclosed

9    to the U.S. Probation Office and the Court but shall not

10   be further disclosed without the approval of the Court.

11          Number eight:  You shall not use or possess

12   any computer, data storage device or internet-capable

13   device unless you participate in computer and internet

14   monitoring program or unless authorized by the Court or

15   the U.S. Probation Office.  If placed in the computer

16   and internet monitoring program, you will comply with

17   all the rules of the program and pay the costs

18   associated with the program.  The U.S. Probation Office

19   may use and/or install any hardware or software system

20   that's needed to monitor your use of a computer or

21   internet-capable device.

22          You shall permit the U.S. Probation Office to

23   conduct periodic, unannounced examinations of any

24   computer, including any data storage device and

25   internet-capable device you use or possess.  This

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1    equipment may be removed by the U.S. Probation Office or

2    their designee for a more thorough examination.  You may

3    be limited to possessing one personal internet-capable

4    device to facilitate the U.S. Probation Office's ability

5    to effectively monitor your internet-related activities.

6              Number nine:  If your employment requires a

7    use of a computer, you may use a computer in connection

8    with the employment approved by the probation officer at

9    your place of employment provided you notify your

10   employer of the nature of your conviction and the fact

11   that your conviction was facilitated by the use of a

12   computer.  The probation office must confirm your

13   compliance with this notification requirement.

14             Ten:  While in treatment and for the remainder

15   of the term of supervision following completion of

16   treatment, you shall not view, possess, own, subscribe

17   to or purchase any materials, including pictures,

18   videotapes, films, magazines, books, telephone services,

19   electronic media, computer programs or computer services

20   that depict sexually explicit conduct as defined in

21   18 U.S. Code, Section 2256(2).

22             Eleven:  You shall participate in a program

23   for substances abuse, which shall include testing for

24   controlled substances, controlled substance analogs and

25   alcohol.  This may include outpatient treatment as

1    recommended by the treatment provider based on your risk

2    and needs.  You may also be required to participate in

3    inpatient treatment upon recommendation of the treatment

4    provider and upon approval of the Court.  The probation

5    office shall approve the location, frequency and

6    duration of the outpatient treatment.

7            You shall abide by the rules of any treatment

8    program which may include abstaining from the use of any

9    alcohol.  You shall contribute to the cost of any

10   evaluation and/or treatment in an amount to be

11   determined by the probation officer based on your

12   ability to pay and the availability of third-party

13   payments.

14           You must participate in a mental health

15   program which may include medical, psychological or

16   psychiatric evaluation and outpatient treatment as

17   recommended by the treatment provider based on your risk

18   and needs.  You may also be required to participate in

19   inpatient treatment upon recommendation of the treatment

20   provider and upon approval of the Court.

21           Probation office will approve the location,

22   frequency and duration of outpatient treatment.  You

23   must abide by the rules of the program which may include

24   a medication regime.  You must contribute to the cost of

25   any evaluation and/or treatment in an amount to be

1    determined by the probation officer based on your

2    ability to pay and the availability of third-party

3    payments.

4          Thirteen:  Based on your past history of

5    alcohol abuse and for the purpose of effective substance

6    abuse treatment programming, you shall refrain from the

7    use of alcohol and be subject to alcohol testing and

8    treatment while under supervision.

9          The Court finds, based on your financial

10    resources, projected earnings, and other income, as well

11    as your financial obligations, that you have the ability

12    to pay restitution; restitution in the amount of at

13    least $32,000 has been requested.

14          The Court determines a total of $9,000

15    restitution is appropriate in this case payable to the

16    victims in the amounts outlined in a moment.  This

17    restitution is due immediately with any remaining

18    restitution payable in an minimal rate of 25 percent of

19    your gross income while incarcerated and minimal rate of

20    $100 per month or 10 percent of your gross income,

21    whichever is greater upon your release from

22    imprisonment.

23          If at any time you have the resources to pay

24    full restitution, you must do so immediately.  Interest

25    requirement is waived.  Payment must be forward to the

1   U.S. District Court in Syracuse for transfer to the

2   following victims:  John Doe 4, 8 Kids Service $15,000.

3   Court orders total $3,000 to be paid on that obligation.

4   Cindy, no less than $8,000 requested.  Court orders a

5   total of 3,000 to be paid to the victim Cindy.  Three,

6   Solomon, Blond series, 9,000, Court orders a total of

7   3,000 to be paid to victim Solomon.

8          Court finds, based on your financial

9   resources, as well as your financial obligation,

10  including the restitution amount just imposed, that you

11  do not have the ability to pay a fine or the additional

12  special assessment outlined in 18 U.S. Code, Section

13  34(d).

14         You shall pay to the clerk of the Court a

15  special assessment of $400 that is due and payable

16  immediately.

17         You shall consent to the entry of forfeiture

18  to the items outlined in the preliminary order of

19  forfeiture.

20         Both you and the government have the right to

21  appeal this sentence under certain limited circumstances

22  except as restricted by any waivers stipulated in the

23  plea agreement.  You are advised to consult with counsel

24  to determine whether or not an appeal is warranted.  Any

25  appeal must be filed within 14 days of the date of the

1    judgment being filed in this case.

2              You're remanded to the custody of the U.S.

3    Marshals in accordance with the terms of this sentence.

4    Mr. Brown, I understand there's nothing else to dismiss?

5              MR. BROWN:  No, your Honor.  Thank you.

6              THE COURT:  Ms. Peebles, do you have a request

7    for a particular facility?

8              MS. PEEBLES:  Yes, your Honor.  My client

9    would like to ask the Court to put a recommendation for

10   Otisville because that is closest to his father where he

11   lives currently in New Paltz.  If that's not an

12   available option, then as close to home as possible

13   provided they can give Mr. Robinson the treatment and

14   the medical.  The medical --

15             THE COURT:  That's kind of -- the problem is

16   that's a conflict because the institution closest to his

17   home are likely not the ones that are the most skilled

18   in giving him the medical care.  I understand recently

19   it's a Texas institution, I believe, not Laredo.  I

20   can't remember.  Where is it in Texas?

21             MR. BROWN:  F.S. Tucson being a very skilled

22   facility with respect to that in Arizona.

23             THE COURT:  He doesn't want to get sent that

24   far away and I understand that.  So I'll recommend that

25   he be placed in an institution that's close to home, if

U.S. v ROBINSON - 18-cr-404

```
 1    not Otisville, as possible.  Hopefully they can find an
 2    institution that will be skilled in giving him some
 3    mental health that he needs in this case.
 4              MS. PEEBLES:  Yes, your Honor and there's two
 5    more things.  I just want to object to the special
 6    assessment, condition number ten, and that I believe
 7    that that condition is overbroad and relatively vague.
 8    So I note my objection on the record for that special
 9    condition.
10              THE COURT:  Sure.
11              MS. PEEBLES:  And also in connection with the
12    sentence, we believe that 360 months is excessive in
13    light of his background.
14              THE COURT:  Since you asked for 15 years,
15    that's double 15 years, I guess you can object.  I have
16    no objection to you objecting.
17              MS. PEEBLES:  Thank you.
18              THE COURT:  Court stands adjourned in this
19    matter.
20              (Proceeding concluded)
21                  * * * * * * * * * *
22
23
24
25
```

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

U.S. v ROBINSON - 18-cr-404

1

2

3

4                    C E R T I F I C A T I O N

5

6

7          I, Lisa L. Tennyson, RMR, CSR, CRR, Federal

8    Official Realtime Court Reporter, in and for the United

9    States District Court for the Northern District of New

10   York, do hereby certify that pursuant to Section 753,

11   Title 28, United States Code, that the foregoing is a

12   true and correct transcript of the stenographically

13   reported proceedings held in the above-entitled matter

14   and that the transcript page format is in conformance

15   with the regulations of the Judicial Conference of the

16   United States.

17

18   ____ _Lisa L. Tennyson_ _____

19          Lisa L. Tennyson, R.M.R., C.S.R., C.R.R.

20

21

22

23

24

25

                 Lisa L. Tennyson, CSR, RMR, FCRR
              UNITED STATES DISTRICT COURT - NDNY